No. 47,921

STATE OF KANSAS, *Appellee,* v. GILBERT M. CARTER, *Appellant.*

(551 P. 2d 821)

Opinion filed June 12, 1976.

*Michael D. Gragert,* of Wood & Gragert, of Wichita, argued the cause and was on the brief for the appellant.

*Stephen M. Joseph,* Assistant District Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, *Keith Sanborn,* District Attorney, and *Clifford L. Bertholf,* Assistant District Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant-appellant (Gilbert M. Carter) appeals from jury convictions on two counts of felony theft. (K. S. A. 21-3701[a].) His principal contentions on appeal concern the admission into evidence of a prior theft conviction and a subsequent similar offense for which no conviction had been obtained. De-

fendant also claims error in the limiting instruction submitted by the court in connection with K. S. A. 60-455.

In the first count of the information defendant was charged with taking $600 in cash and $381 in credit card receipts from Jim's Auto Service in Wichita. In the second count defendant was charged with the theft of $300 in cash from Western Auto Store No. 7 in Wichita.

The state's evidence on count No. 1 consisted primarily of the testimony of Jim Hying, manager of the Apco Service Station, and Brian Hooks, an employee.

On the morning of June 27, 1973, Mr. Hying finished adding up the station's previous day's receipts around 9:40 a. m. He put the day's receipts in a bank pouch and placed the pouch in his desk drawer which he believed was locked. He then left the station to drive a customer home. Shortly thereafter two of the three remaining employees left the station on errands, leaving Hooks working alone.

Shortly before 10:00 a. m. Hooks went out to the station driveway to wait on a customer. While doing so, he testified he saw the defendant walking toward the station building. After he finished with the customer, and was returning to the building, Hooks passed the defendant who was leaving the station wearing an overcoat that came below the knees. Hying testified he returned to the station around 10:05 a. m. and discovered the bank pouch containing approximately $981 in currency was missing from his desk.

Mr. Hying further testified that sometime during the previous month a customer had informed him that a man had been in his office. After being informed Hying immediately returned and checked his desk drawer, but the money pouch had not been taken. Hying testified the man who was pointed out to him by the customer as having been in his office was the defendant. He further testified he later observed this same man on June 29, 1973, near a nearby Western Auto store and subsequently identified his picture as that of the man near the store on that date.

The Western Auto store theft charged against defendant in count No. 2 occurred on June 29, 1973, two days after the service station theft. It appears the Western Auto store was within one block of the service station. Defendant admitted he lived near the vicinity of both alleged crimes. About 9:00 a. m. on June 29, Wayne Hastings, the manager of the Western Auto store, placed $370 in currency in an office drawer. Shortly thereafter the store

opened and a man, subsequently identified as the defendant, approached Hastings concerning a merchandise exchange. Hastings referred defendant to Ben Mader, an employee. Mader went into the store office to get a refund slip since a one-dollar credit was due the defendant. Defendant followed Mader into the office. At this point, defendant told Mader he did not have a sales receipt for his merchandise, so Mader left defendant in the office while he went to confer with the manager. Mader located Hastings, waited ten or fifteen seconds for the latter to finish with a customer, and began to explain the situation to him. At this point, defendant walked up to Hastings and Mader. Mr. Hastings explained to defendant that a sales receipt was needed unless the exchange was a straight swap of merchandise. Defendant then left the store. A few minutes later, when another customer sought change for a twenty-dollar bill, Hastings went to the office drawer and discovered the money was missing.

At trial, in the course of the state's presentation of its case in chief, it offered evidence of a prior similar offense for which defendant was convicted. The information in this prior offense was filed July 24, 1967, charging defendant with grand larceny in the amount of $78 in currency and bank checks which were stolen from Alice H. Christopher at the Phyllis Wheatley Children's home in Wichita on June 2, 1967. The journal entry of judgment was filed on December 7, 1967, and showed defendant's plea of guilty to the charge and subsequent probation.

Before the information and journal entry of judgment, evidencing defendant's 1967 conviction, were offered the trial court held a hearing outside the jury's presence. At the hearing Alice Christopher and her secretary, Loretta Harris, testified in detail concerning the facts underlying the charge and conviction. Mrs. Christopher testified that she knew the defendant and that while working at the Wheatley home on June 2, 1967, she left her purse in her office during the noon hour and returned to find the money missing from it. Mrs. Harris testified that she saw defendant leaving Mrs. Christopher's office, while Mrs. Christopher was at lunch, and that she (Mrs. Harris) questioned defendant and defendant told her his name was Johnson.

Defendant objected to the introduction of the information and journal entry on the ground of remoteness. His counsel, Mr. Lewis, argued:

". . . This has been some seven years ago and we argue that it is too remote in time to have any probative emphasis or value in this particular proceeding. Now if it were seven months ago, or even as late as a year ago, but not seven years ago. It is too remote in time to make it evidentiary."

Defendant also strenuously objected to the admission of the testimony of Mrs. Christopher and Mrs. Harris concerning the circumstances of the offense. The trial court sustained defendant's objection to the testimony of Mrs. Christopher and Mrs. Harris, but did permit the introduction of the information and journal entry.

Later in the state's case in chief, the court permitted the state to introduce the testimony of Bill Sturn and Richard Fife concerning an incident that occurred on August 8, 1973, in Winfield. On that date Sturn was the manager and Fife an employee of a service station in Winfield. Fife testified that he saw defendant drive by the station while Sturn was preparing a bank deposit at his desk in the station. Defendant made a U-turn and drove into the station driveway. Defendant entered the station office and sat at Sturn's desk examining a road map while Fife put some gasoline in his automobile and checked the oil. At this time everyone had left the station, including Sturn and the defendant. Fife further testified that about five minutes later two ladies came to the station and were then followed by the defendant who returned and asked for $2.00 worth of gasoline.

Sturn testified that while he was working on his bank receipts in the morning he saw defendant drive up in a red Cadillac convertible; that Sturn put the money in his desk drawer, which he locked, and went out to wait on customers, including the defendant. Defendant went into the station as Sturn was leaving and asked if he could use the telephone. Sturn further testified that while he was working on an automobile defendant was sitting on the desk looking at a road map; and that when he (Sturn) came back into the station the defendant asked him how to get to Neodesha. After collecting $2.00 from defendant for gasoline, Sturn left the station on an errand. When he returned to the station to go to the bank and make a deposit he discovered the currency was missing and called the police. At the conclusion of the testimony of Sturn and Fife defendant's counsel moved to strike their testimony on the grounds that it was collateral and prejudicial and asked the court to declare a mistrial. The motion was overruled and the court indicated that it was going to advise the jury of the circumstances

and that it was going to use all of the elements (60-455) because the court said the testimony put the "whole ball" into this lawsuit and that it was going to explain how the jury should consider the testimony at this time.

The state objected to an instruction which included all of the elements of 60-455 and stated its position to be that the testimony of Sturn and Fife would only go to prove the elements of plan and identity. The court then indicated that it would orally instruct as to plan and identity and again so instruct in writing at the close of the case. At this point, defendant's counsel lodged an objection which appears in the record as follows:

"Mr. Lewis: I think the Court should instruct the jury with the language of the statute without re-issuing words. I object to the instructions deleting any of the words from the language of the statute."

The court acceded to the objection of defendant's counsel and submitted instruction No. 8 pertaining to the prior conviction and the subsequent offense without deleting any of the elements enumerated in 60-455.

Defendant's position on appeal is untenable for two reasons. First, review on appeal is precluded because we believe the doctrine of invited error is clearly applicable and bars consideration of the issue. Second, review is precluded because, as shown by counsel's statement, no objection was made by defendant to the giving of the instruction. It is true that we have repeatedly disapproved of the giving of a "shotgun" type instruction under 60-455, but we have never held that the giving of a limiting instruction was clearly erroneous merely because all of the elements of 60-455 were included. (*State v. Ponds and Garrett,* 218 Kan. 416, 543 P. 2d 967; *State v. Collins,* 217 Kan. 418, 536 P. 2d 1382; and *State v. Masqua,* 210 Kan. 419, 502 P. 2d 728.)

Likewise, defendant's present appeal counsel takes a position inconsistent with the attack made by defendant's trial counsel concerning the underlying testimony of the Wheatley home conviction. Defendant's present counsel claims error in the admission of an information and journal entry of a prior conviction without admitting any accompanying evidence of surrounding facts and circumstances. Defendant's appellate counsel also restates the contention made below that a seven-year-old conviction is too remote to be admissible. Remoteness was the only objection directed to the admission of the Wheatley home information and journal entry at trial. Remoteness in time, standing alone, is insufficient to establish

reversible error in the admission of a prior conviction. What was held in the recent case of *State v. Cross*, 216 Kan. 511, 532 P. 2d 1357, disposes of defendant's contention in this regard:

"Generally the remoteness in time of a prior conviction, if otherwise admissible, affects the weight of the prior conviction rather than its admissibility. As the time interval between the prior offense and the present offense for which the defendant is on trial lengthens the probative value of the prior conviction progressively diminishes. In determining the relevancy of a prior conviction under K. S. A. 60-455 the matter is left largely to the judicial discretion of the trial judge. However, exercise of that discretion must not be abused. It must be based upon some knowledge of the facts, circumstances or nature of the prior offense." (Syl. 7.)

See, also, *State v. Bly*, 215 Kan. 168, 523 P. 2d 397; and *State v. O'Neal*, 204 Kan. 226, 461 P. 2d 801.

In the instant case the trial court had before it the facts and circumstances underlying the prior conviction and it cannot be said that its decision to admit it over defendant's objection on the ground of remoteness was an abuse of discretion.

Concerning defendant's alternative attack on the admission of the prior conviction that it was reversible error to admit the information and journal entry in the absence of underlying facts and circumstances, which is diametrically opposed to defendant's position taken at trial, we find defendant's present position untenable. In the first place no objection having been lodged on this ground at trial, the specificity requirement of our contemporaneous objection rule, K. S. A. 60-404, precludes appellate review of this contention. In the recent case of *State v. Moore*, 218 Kan. 450, 543 P. 2d 923, we were confronted with the same question concerning admission of a prior conviction. There we held:

"A judgment or verdict will not be reversed or set aside by reason of erroneous admission of evidence unless the party objecting to its admission interposes a timely objection which makes clear the specific grounds therefor." (Syl. 2.)

Defendant now advances the argument that his trial counsel's failure to object should not preclude review of his point since the state warned the trial court and expressed objection to the admission of the information and journal entry without the accompanying testimony of underlying facts and circumstances. We think this argument ignores the probability that the objection of defendant's trial counsel to the admission of evidence of surrounding circumstances was a trial strategy decision motivated by trial counsel's effort at the time to keep matters from the jury which he felt would

be detrimental to defendant's case and helpful to the state. The state, in its brief on appeal, points out that any error in the exclusion of the testimony of Mrs. Christopher and Mrs. Harris was error favorable to the defendant. We are inclined to agree with the state in this regard since the state's case on both counts relied primarily on circumstantial evidence—no witness actually saw defendant take any money. Such being the case the underlying fact testimony which disclosed *modus operandi* substantially similar to that alleged in both counts in the instant case obviously would have aided the state's case in the eyes of the jury. Defendant's trial counsel having successfully objected to the underlying testimony, presumably for the benefit of such exclusion, is in no position now to question the exclusion of the testimony in this appeal. Moreover, defendant fails to show on appeal how he was prejudiced by the court's ruling and, thus, he should not be permitted to obtain review of any errors which he invited the trial court to commit. In this connection, in the recent case of *Grimm v. Pallesen*, 215 Kan. 660, 527 P. 2d 978, we quoted from *Popp v. Popp*, 204 Kan. 329, 461 P. 2d 816:

". . . 'Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review.' . . ." (p. 666.)

In *State v. Phippen*, 208 Kan. 962, 494 P. 2d 1137, wherein the defendant, at trial, requested that evidence pertaining to a lineup be admitted because, as counsel stated, it would serve a useful purpose and then on appeal defendant attacked the admission of the lineup evidence, we said:

"Appellant not only waived objection to the lineup evidence, she expressly requested its admission as a matter of trial strategy. It is fundamental that a litigant who invites and leads a trial court into error will not be heard on appeal to complain of that action. (citing case.)" (p. 966.)

Because of the position taken by defendant at trial, with respect to the testimony concerning the Wheatley home conviction and the 60-455 limiting instruction, we find no error in the trial court's ruling in either instance.

Defendant also contends the trial court erred in admitting testimony concerning the Winfield service station incident. The defendant's argument on this point is that since this incident occurred subsequent to the offenses for which defendant was being tried and since defendant had not been convicted of any crime in connection with the Winfield incident, evidence thereof was erroneously

admitted. K. S. A. 60-455 does not limit relevant evidence of other offenses to those occurring prior to the charged offenses and for which a conviction had been obtained. We have repeatedly held that relevant evidence of other offenses is admissible, even though occurring after the charged offense and even though defendant had not been convicted or prosecuted for the subsequent offense. (*State v. James*, 217 Kan. 96, 535 P. 2d 991; *State v. Morgan*, 207 Kan. 581, 485 P. 2d 1371; and *State v. Darling*, 197 Kan. 471, 419 P. 2d 836.)

Defendant contends that he was denied effective assistance of counsel at trial. His arguments on this point are directed at trial counsel's actions with respect to instruction No. 8 and the admission of the background testimony concerning the Wheatley conviction. Defendant's trial counsel is an experienced trial attorney. A close examination of the trial record indicates that his conduct at trial was much more likely to have been well thought-out trial strategy rather than failure to recognize the points of law involved. In this case there was considerable evidence of similarity of *modus operandi* in all of the offenses committed by defendant. In each instance defendant's method was to arrange a situation where he would be alone in an office with possible access to the cash drawer, or as in the Wheatley home case, await an opportunity when money would be unguarded and accessible. Counsel foreseeing the impact of such evidence on the case at trial could well have determined that the evidence which he sought to and did exclude would have substantially benefited the state in shoring up its case which was based largely on circumstantial evidence. Before it can be said that a defendant has been denied his constitutional right to counsel, it must clearly appear that the representation afforded him was wholly ineffective and inadequate.

In view of the circumstances, which we have gleaned from the record, we cannot say that defendant's representation at trial was either ineffective or inadequate.

Finally, defendant complains the verdict was not supported by the evidence. Under our long established rule, the issue on appeal in this regard is not whether the evidence established guilt beyond a reasonable doubt, but whether the evidence is sufficient to form the basis for a reasonable inference of guilt when viewed in the light most favorable to the state, the prevailing party below. A verdict of guilty in criminal cases will not be disturbed if there is substantial evidence, even though entirely circumstantial, from

which the jury could draw a reasonable inference of guilt. (*State v. Ritson,* 215 Kan. 742, 529 P. 2d 90, and cases cited therein.)

Viewing the record before us in the light most favorable to the state, as we are required to do, we are satisfied that there is substantial competent evidence to support the verdict.

The judgment is affirmed.