(610 P.2d 655)

No. 50,996

STATE OF KANSAS, *Appellee,* v. KERWIN BROWN, *Appellant.*

Opinion filed May 9, 1980.

*Richard G. Tucker,* of Parsons, for appellant.

*Charles S. Gray,* county attorney; and *Robert T. Stephan,* attorney general, for appellee.

Before ABBOTT, P.J., SWINEHART and MEYER, JJ.

MEYER, J.: This is an appeal from Kerwin Brown's (appellant's) conviction of the crimes of burglary (K.S.A. 21-3715), of misdemeanor theft (K.S.A. 21-3701), and of misdemeanor criminal damage to property (K.S.A. 21-3720).

On June 23, 1978, the Townsman Restaurant in Parsons, Kansas, was burglarized; a cigarette vending machine had been pried open and the coins removed from it. Appellant was seen at approximately 2:20 a.m. riding away from the area of the Townsman Restaurant on a motorcycle at a high rate of speed; he was not wearing a shirt.

At approximately 3:00 a.m. on that same date, appellant went to the American Legion in Parsons and knocked at the front door. The manager recognized the appellant but did not answer the door. She heard a car drive to the rear of the building and heard a pounding noise on the back wall which sounded to her like brick breaking. After the manager heard the sound at the rear of the building, she called the police and appellant was arrested while driving away from the American Legion. A pick and some other tools were discovered in his car and $12.90 in change was found on his person. A shirt was later found in some bushes near the restaurant and testimony established that it was similar to the one appellant had been seen wearing. The Kansas Bureau of Investigation laboratory examined the shirt and established that hair found on it was similar to hair of the appellant.

Appellant was charged with aggravated burglary, attempted burglary, possession of burglary tools, misdemeanor theft and misdemeanor criminal damage to property. The aggravated burglary charge was reduced to burglary before trial.

At trial, the State was allowed to introduce evidence of a prior conviction of appellant for burglary and theft of a grocery store, over appellant's objection. Appellant's first issue is his claim that the trial court erred in admitting evidence of his prior conviction.

The trial court conducted a hearing out of the presence of the jury and determined that appellant's prior conviction for burglary and theft of a grocery store in Parsons was admissible as relevant to the issue of identity on the burglary charge and intent with regard to the attempted burglary and possession of burglary tools charges.

Under K.S.A. 60-455, it is incumbent upon the trial court to first decide whether the former conviction is relevant to prove one of the specific factors of proof listed in the statute. In addition, the court must determine that the particular factor or factors sought to be proved are substantially in issue. *State v. Faulkner,* 220 Kan. 153, 551 P.2d 1247 (1976). Lastly, the court must determine if the evidence of other crimes has probative value which outweighs its prejudicial effect upon the jury. See *State v. Bly,* 215 Kan. 168, 523 P.2d 397 (1974); *State v. Henson,* 221 Kan. 635, 562 P.2d 51 (1977).

One of the grounds for the prior conviction to be admitted was that it was relevant to prove identity. Where the prior conviction is used to prove identity, the evidence should disclose sufficient facts and circumstances to raise a reasonable inference that the defendant committed both offenses. It is not sufficient simply to show that the offenses were violations of the same or a similar statute. *State v. Donnelson,* 219 Kan. 772, 775-76, 549 P.2d 964 (1976).

The similarities between the present crime and the prior conviction of appellant are: (1) both the crime charged and the prior conviction were for burglary, and both were burglaries of business establishments as opposed to residential burglaries; (2) the time of the crimes was similar, that is, in the very late-night or early-morning hours; (3) cigarettes were the focal point in appellant's earlier conviction and in the present case a focal point was a cigarette machine; (4) in both the prior conviction and the instant case entry was made by forcing open a door; and (5) both incidents were committed in Parsons, Kansas.

In considering the above similarities, we note that in *State v. Marquez,* 222 Kan. 441, 448, 565 P.2d 245 (1977), the court states:

"Here the similarity in the two burglaries in the city of Liberal and the jewelry store burglary can be established in four respects. First, all three burglaries took place during the late-evening, early-morning hours. Second, all three burglaries were directed toward a business establishment as opposed to a residence. Third, in all three burglaries entry was forced by the use of a long metal tool. Finally, in all cases the burglary was directed at a business establishment after all personnel had vacated the building."

It is noted the similarities of the *Marquez* case and the instant case are striking. Other cases finding a similarity under factual situations like the instant case are *State v. Jackson,* 222 Kan. 424, 565 P.2d 278 (1977), and *State v. Howard,* 220 Kan. 117, 551 P.2d

835 (1976). We conclude the prior conviction was relevant to prove identity.

Next we consider whether the prior conviction was relevant to prove intent and whether intent was substantially in issue. In the instant case an intent to burglarize an establishment is not obvious from the chipping away at the outside of the American Legion building, nor is such an intent obvious from the possession of the tools taken from defendant. In *State v. Nading*, 214 Kan. 249, 254, 519 P.2d 714 (1974), the court said:

"Where an act in itself may be susceptible of two interpretations, one innocent and the other criminal, then the intent with which the act is done becomes the critical element in determining its character."

We conclude that the prior conviction was relevant to show intent and that intent was substantially in issue with regard to the attempted burglary charge and the possession of burglary tools charge.

Appellant also argues that the previous conviction of the appellant herein was too remote and that it occurred some eight years before the instant charges were brought. However, we note in *State v. Carter*, 220 Kan. 16, Syl. ¶ 3, 551 P.2d 821 (1976), the court held:

"Generally the remoteness in time of a prior conviction, if otherwise admissible, affects the weight of the prior conviction rather than its admissibility."

Appellant raises another issue with regard to the admission of the prior conviction. He stated that only the journal entry was presented at the trial, and therefore, the jury did not have sufficient facts before it to make the determination that the prior conviction was similar to the case at bar. The record discloses, however, that counsel examined a patrolman who had investigated the prior crime. The patrolman testified as to the time, place, manner of breaking in, and the fact that the cigarettes were taken rather than money. The jury thus had before it the similarities between the crimes. Furthermore, in *State v. Faulkner*, 220 Kan. at 157, the court states:

"[W]hile, *ordinarily*, evidence of prior convictions of similar crimes is relevant to prove a specific intent without a showing of the specific facts and circumstances involved in the prior offense, this general rule must be tempered with the requirement of 'similarity.' The similarity of offenses is a key factor in relevancy. [Citations omitted.]" (Emphasis in original.)

We find no error as to appellant's claim in this regard.

Finally, we find in *State v. Cross,* 216 Kan. 511, 520, 532 P.2d 1357 (1975):

" 'The determination of relevancy is a matter left to the judicial discretion of the trial judge. However, exercise of that discretion must not be abused. *It must be based upon some knowledge of the facts, circumstances or nature of the prior offense.'* " (Citing from *State v. O'Neal,* 204 Kan. 226, 231, 461 P.2d 801 [1969].) (Emphasis added.)

Appellant contends the trial judge abused his discretion in finding that the probative value of the conviction outweighed its prejudicial effect. As was said in *LaRue v. LaRue,* 216 Kan. 242, 249-50, 531 P.2d 84 (1975):

"One seeking to establish an abuse of discretion assumes a heavy burden, for 'If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion.' " (Citing from *Stayton v. Stayton,* 211 Kan. 560, 562, 506 P.2d 1172 [1973].)

We find no abuse of discretion herein.

Appellant's other claim of error is that the trial court erred in requiring the exercise of peremptory challenges to be made in chambers instead of in the presence of the jury.

In the instant case, when it came time to exercise the peremptory challenges, the record discloses the following:

"THE COURT: All right. I'm just wondering do we need to go back in the courtroom and pass the jury for cause and then recess for the peremptory challenges?

"MR. TUCKER: It's on the record. I've passed them for cause. I just passed them for cause. I don't see any problem with going ahead. Your Honor, on the other hand, I think maybe I would like to go back in there. At least I would like to see them sitting there one more time before we strike because it's very difficult for me and the defendant to strike out of 24 if we don't have a pretty good look at them 'cause it's hard to remember just from a spot on a page. In face, I prefer to conduct that with the jury seated.

"THE COURT: I know you do.

"MR. TUCKER: By just passing a sheet, and that's the way I've done it in many courts.

"THE COURT: I know you do, but I don't, and I decline to exercise peremptory challenges in the courtroom. I think they should be done in chambers. But we'll go back in the courtroom and you can pass the jury for cause in the courtroom, then.

"MR. TUCKER: Maybe we can get a look at them that way.

"THE COURT: I take it that's what you want to do.

"MR. TUCKER: Just to get another look at them, try to see where they're at and get them fixed in my mind because it's very difficult.

"THE COURT: Peremptory challenges, though, will be done in chambers. Okay.

"MR. TUCKER: Fine."

From the briefs of the parties herein, it is apparent that neither of them could find a case discussing the problem raised by this issue. While our research has disclosed no Kansas case on this matter, we have found a North Carolina case where the court stated:

" '. . . Each defendant is entitled to full opportunity to face the prospective jurors, make diligent inquiry into their fitness to serve, and to exercise his right to challenge those who are objectionable to him. . . .' " *State v. Hayes,* 291 N.C. 293, 297, 230 S.E.2d 146 (1976), citing from *State v. Perry,* 277 N.C. 174, 177, 176 S.E.2d 729 (1970).

Also, an early United States case states as follows:

"Any system for the empanelling of a jury that [prevents] or embarrasses the full, unrestricted exercise by the accused of that right, must be condemned. And, therefore, he cannot be compelled to make a peremptory challenge until he has been brought face to face, in the presence of the court, with each proposed juror, and an opportunity given for such inspection and examination of him as is required for the due administration of justice." *Pointer v. United States,* 151 U.S. 396, 408-9, 38 L.Ed. 208, 14 S.Ct. 410 (1894).

While the Kansas criminal code is no help to us in this matter in that it fails to advise where, or upon what conditions, peremptory challenges are to be exercised, the code of civil procedure at K.S.A. 60-247(c) states in part:

"Peremptory challenges shall be exercised in a manner which will not communicate to the challenged prospective juror the identity of the challenging party or attorney."

We assume that it is this language which causes some district judges to choose to have peremptory challenges exercised in chambers.

We conclude that the manner and place of exercising peremptory challenges is within the sound discretion of the trial judge. In the rural areas of the state, it often occurs that the jurors are known both to the parties and to counsel. Under such circumstances, we can find no problem with conducting the peremptory challenges in chambers. However, in metropolitan areas, it is entirely possible that the attorneys would be inconvenienced to a considerable degree if they were unable to view the jury at the same time as they exercised each peremptory challenge.

The problem is not an "open court" problem as that matter was determined in *Morris v. State,* 2 Kan. App. 2d 34, Syl. ¶ 3, 573 P.2d 1130 (1978), where it was stated:

"If, in the judge's office or 'chambers', the court is in session as to the matter on trial, any judicial action is taken 'in court' and not 'in chambers'."

Rather the problem is one of practicality, and can be summarized as follows: Is it reasonably necessary, or would it be beneficial to assuring the defendant a fair trial, that he and his attorney be able to actually view the entire panel as he exercises each of his peremptory challenges and as same are exercised by the State? This must be decided on a case-by-case basis. We do believe that in the event a defendant specifically requests that he be permitted to exercise his peremptory challenges at a place where he can view the jurors as he does so, his request should be granted.

In the instant case, however, we conclude that appellant effectively waived his rights to complain about the manner of the jury selection when he stated that his primary desire was to get a look at the panel again before exercising peremptory challenges. Appellant responded in a way to indicate his acquiescence in the decision to hold such challenges in chambers and he did not preserve his objection for appeal. We conclude that by this the appellant effectively waived his right to complain about peremptory challenges being exercised in chambers.

Affirmed.

ABBOTT, J., concurring: I disagree with that portion of the majority opinion that characterizes the right of a criminal defendant to be present at the time his peremptory challenges are exercised as a matter of "practicality" which allows such proceedings to be conducted in chambers and out of the presence of the potential jurors.

An accused has a constitutional right to be present at every stage of his or her trial. *State v. Antwine,* 4 Kan. App. 2d 389, 401, 607 P.2d 519 (1980). This right includes the right to be present during the impaneling of the jury. K.S.A. 22-3405(1). In *Pointer v. United States,* 151 U.S. 396, 408-09, 38 L.Ed. 208, 14 S.Ct. 410 (1894), the United States Supreme Court held:

"The right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to the accused. . . . He may, if he chooses, peremptorily challenge 'on his own dislike, without showing any cause;' he may exercise that right without reason or for no reason, arbitrarily and

capriciously. [Citations omitted.] Any system for the empanelling of a jury that [prevents] or embarrasses the full, unrestricted exercise by the accused of that right, must be condemned. And, therefore, he cannot be compelled to make a peremptory challenge until he has been brought face to face, in the presence of the court, with each proposed juror, and an opportunity given for such inspection and examination of him as is required for the due administration of justice."

The Supreme Court of North Carolina stated in *State v. Hayes,* 291 N.C. 293, 297, 230 S.E.2d 146 (1976):

" ' . . . . Each defendant is entitled to full opportunity to face the prospective jurors, make diligent inquiry into their fitness to serve, and to exercise his right to challenge those who are objectionable to him. . . .' "

The majority interprets these authorities to mean that the trial judge has great discretion in conducting the criminal trial which includes the discretion to allow peremptory challenges to be exercised in chambers out of the presence of the jury panel. While I recognize the need to prevent the prospective juror from discovering the identity of the challenging party or attorney, there are other methods of maintaining secrecy that do not impinge on the defendant's constitutional right to see the jurors as the challenges are being exercised. The actual conduct of the trial must be left largely to the sound discretion of the trial judge *so long as the defendant's rights are scrupulously afforded him. State v. Perry,* 277 N.C. 174, 177, 176 S.E.2d 729 (1970).

In my mind, the Supreme Court has directed that the prospective jurors be present while the peremptory challenges are being made. In *Lewis v. United States,* 146 U.S. 370, 376, 36 L.Ed. 1011, 13 S.Ct. 136 (1892), the Court stated:

"Thus reading the record, and holding as we do that making of challenges was an essential part of the trial, and that *it was one of the substantial rights of the prisoner to be brought face to face with the jurors at the time when the challenges were made,* we are brought to the conclusion that the record discloses an error . . . ." (Emphasis added.)

In *Pointer,* the case the majority principally relies on, it was noted:

"If it did not appear affirmatively from the record of this case that the accused was, in fact, brought face to face with all the jurors who were examined as to their qualifications, and whose names were on the list of thirty-seven furnished to him, or that he was not present during such examination, *or that they were not all in his presence when he exercised his right of challenge,* the judgment would be reversed for the reasons stated in *Lewis v. United States.* We adhere to the decision in that case, as based upon sound principle." 151 U.S. at 406 (emphasis added).

Although it is my opinion definite error was committed in this case, I concur with the majority that the judgment must be affirmed. The right of a defendant to be present at every stage of the trial is not absolute. The right to be present is personal and may be waived by the defendant. See *Diaz v. United States,* 223 U.S. 442, 56 L.Ed. 500, 32 S.Ct. 250 (1912). As the majority points out, defendant's attorney effectively waived his client's right to exercise his challenges in the jury panel's presence when he agreed to hold such challenges in chambers. The record indicates that the defendant was present at the time his attorney waived this right. In *State v. Sandstrom,* 225 Kan. 717, 721, 595 P.2d 324, *cert. denied* November 5, 1979, the Supreme Court of Kansas held that an attorney may waive a client's right to be present at trial when based on the record at trial it is shown that the defendant himself voluntarily waived the right to be present. Accordingly, defendant has lost his right to. assert what otherwise would amount to reversible error.